UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SHAWN M. LOCKETT ET AL                           CIVIL ACTION

VERSUS                                           NO: 08-4712

NEW ORLEANS CITY ET AL                           SECTION: J(2)

## ORDER AND REASONS[1]

Before the Court is the **Motion to Dismiss Plaintiffs' Complaint Pursuant to F.R.C.P. 12(c) or, Alternatively, for Summary Judgment Pursuant to FRCP 56 (Rec. Doc. 57)**, filed by Mayor C. Ray Nagin ("Nagin") in his official capacity as Mayor of New Orleans; Warren J. Riley ("Riley") in his official capacity as Superintendent of the New Orleans Police Department ("NOPD"); NOPD Lieutenant Lynn Fletcher ("Fletcher"), as well as NOPD officers Toka Clark ("Clark") and Reginald Gaines ("Gaines"), collectively "the NOPD Defendants." These various defendants will be referred to collectively as "the City Defendants." This motion seeks dismissal of (1) Plaintiff's claims under § 1983 against the NOPD Defendants for false arrest, excessive use of force, and unreasonable search and seizure (2) Plaintiffs' claims

---

[1] The abbreviations utilized in the Court's related order in this case (Rec. Doc. 81) will also be used in discussing the present motion. Specifically, the national guardsmen Christopher Ahner, Brandt Arceneaux, and Jonathan Bieber will be referred to collectively as "the MP Defendants." Additionally, Governor Jindal, SUNO officer Joseph Thomas, and the MP Defendants will be referred to collectively as "the State Defendants."

against Fletcher under 42 U.S.C. § 1985, and against Fletcher, Gaines, and Clark under 42 U.S.C. § 1986; (3) Mrs. Lockett's claims for intentional infliction of emotional distress under Louisiana Civil Code Article 2315.6; (4) Lockett's state law claims against Fletcher, Gaines, and Clark for intentional infliction of emotional distress, loss of reputation, humiliation, embarrassment, and negligence; (5) Plaintiffs' claims against Nagin and Riley under 42 U.S.C. § 1983 for institution of a policy of inadequate training for and resulting constitutional violations by national guardsmen participating in Task Force Gator; (6) Plaintiffs' claims against Nagin and Riley for prospective injunctive relief.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

The Court has provided an exhaustive summary of the factual circumstances of this case in its ruling (Rec. Doc. 81) on the State Defendants' Motion to Dismiss and Motion for Summary Judgment. As such, the Court will not rehash those same facts in addressing the present motion, and incorporates its prior summary of the facts *in extenso.*

## THE PARTIES' ARGUMENTS

As an initial matter, the City Defendants contend that Plaintiffs' claims must be dismissed as inadequate on the face of their pleadings under Rule 12(c). Additionally, and in the alternative, the City Defendants contend that Plaintiffs have not

2

met their burden on the present summary judgment record of presenting specific evidence to refute the qualified immunity defense invoked by the City Defendants.

As such, the City Defendants incorporate by reference the section entitled "Qualified Immunity" from the State Defendants' Motion for Summary Judgment (Rec. Doc. 48) in support of their own motion for summary judgment on qualified immunity grounds as to Lockett's federal and state law false arrest claims. In addition to the arguments set forth in that adopted pleading, the City Defendants argue that Lockett's false arrest claims fail as a matter of law because, even if there were no probable cause to arrest him for reckless driving - which the City Defendants deny -probable cause existed for other arrestable offenses - namely careless operation, failure to have proof of insurance, disregarding traffic signals, and illegal and reckless lane changing, amongst others. Finally, Fletcher individually asserts that any false arrest claims against him are barred as a matter of law, as he relied on probable cause supplied by the MP Defendants.

The City Defendants also contend that, because Lockett pled guilty to and paid a fine for a lesser charge in connection with the arrest, he is barred from bringing any civil suit for false arrest because his guilty plea is conclusive proof of probable cause. See Heck v. Humphrey, 512 U.S. 477 (1994); Gibson v.

State, 758 So. 2d 782, 788 (La. 2000).

Finally, Fletcher individually argues under the Fifth Circuit's "collective knowledge doctrine" regarding probable cause for arrest - which essentially allows an officer who arrests based on probable cause supplied by another officer's information to invoke qualified immunity - that he is entitled to qualified immunity as to Lockett's false arrest claims. See United States v. Webster, 750 F.2d 307, 323 (5th Cir. 1984). The collective knowledge doctrine applies as long as "it [is] objectively reasonable for [the arresting officer] to believe, on the basis of the statements [of another officer], that probable cause for the arrest existed." Deville v. Mercantel, 2009 WL 1162586, *6 (5th Cir. May 1, 2009).

Next, the City Defendants adopt *in toto* the arguments presented in the State Defendants' motion for summary judgment[2] as to Plaintiffs' claims under 42 U.S.C. §§ 1985 and 1986.[3]

As for Lockett's state law claims, the City Defendants argue that these fail as well given the existence of probable cause to arrest Lockett.

---

[2] See Rec. Doc. 48, Sections entitled "No Evidence to Support 42 U.S.C. § 1985 Claims," at pp. 15-18, and "Lockett's 42 U.S.C. § 1986 Claim Fails with his 42 U.S.C. § 1985 Claim," at pp. 18-19.

[3] As the Court has previously noted, Plaintiffs have abandoned their claims under 42 U.S.C. § 1981, and thus the City Defendants opposition as to those claims is moot. Rec. Doc. 81, p. 24, n. 13.

4

The City Defendants also adopt the State Defendants arguments for summary judgment[4] as to Mrs. Lockett's claims for intentional infliction of emotional distress under Article 2315.6 of the Louisiana Civil Code.  Likewise, the City Defendants argue that Lockett has no independent claim for emotional distress under Louisiana law, and thus, because his false arrest claims fail, his claim for emotional distress damages should also be dismissed.  In addition, and in the alternative, even assuming that Lockett could state a separate cause of action for emotional distress, he has not met the heavy burden of proving such damages.  See White v. Monsanto, 585 So. 2d 1205 (La. 1991).

Finally, as to the claims against Nagin and Riley, the City Defendants argue that since Lockett's constitutional tort claims fail, the Court need not reach the question of whether a City policy caused any such torts.  As such, the City Defendants argue that Plaintiffs' § 1983 claims against Nagin and Riley for municipal liability under Monell v. Dept. of Soc. Services, 436 U.S. 658, 694 (1978), fail along with his constitutional tort claims.  Further, even if the Monell claim were factually supportable, the City Defendants argue that Plaintiffs have not made any showing that an official policy or custom inflicted the constitutional torts alleged by Lockett.  See Monell, 436 U.S. at

---

[4] See Rec. Doc. 48, Section entitled "Melanie Lockett Fails to State a Claim Upon Which Relief Can be Granted," pp. 22-24.

5

694. Additionally, the City Defendants note that isolated unconstitutional acts of municipal employees will almost never trigger liability. Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).

In opposition, Plaintiffs first and foremost argue that "it is preposterous to even suggest that probable cause existed" to arrest Lockett in light of Lockett's claims that he was retaliated against for his claims of racial discrimination. Additionally, Plaintiffs contend that material issues of fact exist regarding whether and to what extent Fletcher was aware of Lockett's discrimination claims during the events of this case. Specifically, despite the fact that he appeared on the scene in response to Lockett's 911 call and Ahner's radio request, Fletcher claims he did not know about and did not investigate Lockett's discrimination claims, notwithstanding the fact that he communicated with both Lockett and the MP Defendants for over thirty minutes prior to Lockett's eventual arrest. As such, Plaintiffs argue that this question of fact remains regarding whether Fletcher and the other NOPD Defendants acted with malice in the alleged violations of Lockett's constitutional rights.

Next, Plaintiffs generally contend that the City Defendants' motion, insofar as it proceeds under Rule 12(c), should be denied, as their pleadings adequately assert the causes of action at issue. Accordingly, the bulk of Plaintiffs' opposition

addresses the City Defendants' arguments for summary judgment.

Plaintiffs state that on his arrival at the scene, Fletcher had a duty to investigate Lockett's complaint and to determine whether probable cause existed for his arrest. Specifically, Plaintiffs point out the testimony of Bieber and Arceneaux that they only intended to warn Lockett, and thus argue that no probable cause existed to support the arrest. Further, Plaintiffs note that when Fletcher arrived, Lockett was already handcuffed, but Fletcher never asked why, and further did not inquire as to whether or how many times Lockett was frisked or whether he had been mirandized. Finally, Plaintiffs contend that Gaines and Clark had no personal knowledge of any conduct by Lockett meriting any law enforcement action, and did not make any personal investigation into the situation. As such, Plaintiffs argue that the NOPD Defendants breached their duty to investigate alleged unconstitutional actions by fellow officers.

With this background, Plaintiffs re-adopt their arguments in opposition to the State Defendants qualified immunity arguments, and further contend that material issues of fact exist regarding the City Defendants entitlement to qualified immunity. In sum, Plaintiffs argue that there is a missing link in the probable cause chain between the initial purpose of the stop - which Bieber and Arceneaux both testified was to issue a warning for careless driving - and the eventual grounds for arrest on charges

7

of reckless driving.  Based on this incomplete picture, Plaintiffs argue that there is a question of fact regarding whether Fletcher had probable cause to arrest Lockett.  As further evidence of this fact issue, Plaintiffs note that Article 213 of the Louisiana Code of Criminal Procedure requires that officers who have witnessed a misdemeanor effect an immediate arrest.  La. Code Crim. Proc. art. 213.  Plaintiffs point out that Fletcher arrived on the scene at approximately 9:29 a.m., but Lockett was not actually taken from the scene until 10:11 a.m.  Based on this chronology, as well as Fletcher's admission to Lockett that they were deciding whether to arrest him, Plaintiffs contend that Fletcher lacked probable cause to make an arrest in compliance with Article 213.

Additionally, Plaintiffs contend that the City Defendants' reliance on the Heck doctrine is misplaced.  Plaintiffs argue that because Lockett pled guilty to a non-moving, non-arrestable offense, Heck is completely irrelevant.  Likewise, Plaintiffs argue that the "myriad" of other offenses for which the City Defendants argue Lockett could have been arrested are actually *non-arrestable offenses*.  Finally, Plaintiffs argue that Fletcher could not have reasonably relied on the probable cause to arrest for reckless driving allegedly supplied by Arceneaux and Bieber because they themselves did not have probable cause, and admitted as much when they testified that they only intended to give

Lockett a warning.

Next, in light of the City Defendants' adoption of the State Defendants' arguments for summary judgment as to Plaintiffs' §§ 1985 and 1986 claims, the Plaintiffs adopt their opposition to the State Defendants' motion.

As for their state law claims, Plaintiffs reiterate their argument that the NOPD Defendants lacked probable cause to arrest Lockett. As such, Plaintiffs argue that Lockett's claims of false arrest and concomitant emotional distress cannot be dismissed on summary judgment. Next, Plaintiffs argue, adopting their briefing in opposition to the State Defendants' motion, that Mrs. Lockett has sufficiently stated a cause of action for intentional infliction of emotional distress under the Louisiana Supreme Court's holding in Lejeune as well as Article 2315.6. In addition, Lockett argues that he has stated a claim for intentional and negligent infliction of emotional distress, which manifested itself in increased anxiety and depression, as well as a drastic drop in grades during his first year in law school as compared with his record at SUNO as an undergraduate.

Finally, Plaintiffs claim that they have asserted viable Monell claims against Nagin and Riley.

## DISCUSSION

As an initial matter, the Court finds that the City Defendants arguments under Rule 12(c) are unavailing, and as such

9

will only consider their arguments for summary judgment. The Court will address each of Plaintiff's claims, and the City Defendants' various grounds for summary judgment as to those claims, in order.

### (1) False Arrest Claims under § 1983 and Louisiana Law[5]

Lockett asserts claims under § 1983 as well as Louisiana law for false arrest against the NOPD Defendants. However, as the Court has previously determined (See Rec. Doc. 81), and despite Plaintiffs' contention that a finding of probable cause would be "preposterous," the MP Defendants did in fact have probable cause to arrest Lockett, either for reckless driving or the arrestable offense of careless driving.

To the extent Plaintiffs argue that the "myriad" of other arrestable offenses noted by the City Defendants were actually non-arrestable offenses, they are simply wrong in their

---

[5] The Court notes that Plaintiffs' complaint also asserts claims of excessive force and unreasonable search and seizure against the NOPD Defendants. Rec. Doc. 1, p. 13 at ¶ LVII. However, neither the City Defendants, nor Plaintiffs, have addressed these claims in the briefing on the present motion for summary judgment. However, the Court notes that none of the NOPD Defendants frisked or handcuffed Lockett until he was actually arrested and taken to central lockup. In fact, Lockett admitted at his deposition that he did not incur any physical injuries as the result of any actions of the NOPD Defendants. Likewise, Lockett essentially admitted that the only search conducted by the NOPD Defendants was reasonable. As such, Lockett has admitted that the only claims he is asserting against the NOPD Defendants had to do with the validity of his arrest. Accordingly, any excessive force or illegal search and seizure claims against the NOPD Defendants should be dismissed with prejudice.

contention that careless driving is not an arrestable offense. Louisiana courts have held that even the offense of "careless driving," which both Bieber and Arceneaux testified was a proper characterization of Lockett's traffic violations, constitutes an arrestable offense. See State v. Short, 839 So.2d 173 (La. App. 4 Cir. 2003). Based on the MP Defendants adequate probable cause for arresting Lockett, the NOPD Defendants reasonably relied on that probable cause in eventually effecting Lockett's arrest. "[W]here a police officer makes an arrest on the basis of oral statements by fellow officers, an officer will be entitled to qualified immunity from liability in a civil rights suit for unlawful arrest provided it was objectively reasonable for him to believe, on the basis of the statements, that probable cause for the arrest existed." Deville v. Marcantel, --- F.3d ----, 2009 WL 1162586 (5th Cir. May 1, 2009) (citing Rogers v. Powell, 120 F.3d 446, 455 (3d Cir.1997)). The Deville court found that an arresting officer was entitled to qualified immunity for false arrest claims based on the fact that "the uncontroverted evidence show[ed] that [another officer] communicated the reason for the stop to [the arresting officer], specifically relaying that [the plaintiff] had been speeding and refused to sign the traffic ticket . . . [and the fact that] there was no evidence that [the arresting officer] had a reason to disbelieve [the informing officer's] account at the time of the . . . arrest." Id.

11

Similarly, in this case, the evidence, while not necessarily uncontroverted, reveals that Bieber and Arceneaux informed Fletcher, who along with Gaines and Clark effected the actual arrest, that Lockett had run a red light and a stop sign, and had been speeding, all of which in their opinion supported probable cause for the violation of reckless driving. In the end, even "if officers of reasonable competence could disagree on whether or not there was probable cause to arrest a defendant, immunity should be recognized." Gibson v. Rich, 44 F.3d 274, 277 (5th Cir.1995). Accordingly, the NOPD Defendants properly relied on the probable cause statements of Bieber and Arceneaux in effecting Lockett's arrest. Furthermore, there is no evidence to suggest that the NOPD Defendants had any reason to disbelieve Bieber and Arceneaux's account at the time of Lockett's arrest.

Lockett argues that Fletcher had reason to disbelieve the MP Defendants in light of Lockett's claims of racial discrimination, and in light of Fletcher's failure to investigate those claims. However, this argument is belied by the record. First, Fletcher testified that he was never informed at any point over the course of the events leading up to the arrest that Lockett had made any complaint regarding racial discrimination. Second, although Lockett testified generally that he did inform Fletcher about the allegedly racial comments made by Bieber, he did not give any specific testimony regarding what he told Fletcher about those

comments.  As such, on the present record, the Court finds that there is no question of fact as to whether Fletcher had probable cause based on Bieber and Arceneaux's statements to arrest Lockett.  Accordingly, Lockett's federal and state law false arrest claims against Fletcher and the other NOPD Defendants fail as a matter of law.

Based on this analysis, the City Defendants' reliance on the Heck doctrine is moot, and thus the Court will not address those arguments.

**2)  Plaintiffs' Claims under §§ 1985 & 1986[6]**

As the City Defendants have adopted the State Defendants' arguments in support of summary judgment regarding Plaintiffs' claims under §§ 1985 and 1986, and as Plaintiffs' have likewise adopted their opposition to the State Defendants' motion, the Court adopts the analysis and conclusion from its prior ruling on the State Defendants' motion (Rec. Doc. 81), which granted the State Defendants' motion for summary judgment with respect to those claims.  As such, the City Defendants motion for summary judgment as to the claims against the NOPD Defendants under §§ 1985 and 1986 should be granted.

**3)  Mrs. Lockett's Claims under Article 2315.6 of the**

---

[6] As noted earlier, Plaintiffs have conceded in their opposition to the State Defendants' motion for summary judgment that they have not and cannot state a claim for relief under § 1981, and thus consent to the summary dismissal of their claim under that section.

13

**Louisiana Civil Code**

The City Defendants have adopted the State Defendants arguments in support of summary judgment as to Mrs. Lockett's claims under Louisiana Civil Code Article 2315.6, and the Plaintiffs' have adopted their related opposition. Accordingly, for the same reasons provided by the Court in its ruling on the State Defendants motion (Rec. Doc. 81), the City Defendants' motion for summary judgment as to Mrs. Lockett's claims of bystander damages for intentional infliction of emotional distress under Article 2315.6 should be granted.

### 4) Lockett's Claims for Emotional Distress, Loss of Reputation, Humiliation, Embarrassment, and Negligence

As the Court has previously noted (See Rec. Doc. 81), Lockett's claims for intentional and/or negligent infliction of emotional distress require a showing that (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. White v. Monsanto Company, 585 So.2d 1205, 1209 (La.1991). As it found with respect to the State Defendants, the Court likewise finds that there is no evidence in the present record to indicate that the conduct of the City Defendants was "extreme and outrageous" or that any of

14

the City Defendants "desired to inflict emotional distress" or knew that such distress would occur in the circumstances. Thus, the City Defendants' motion for summary judgment as to Lockett's claims for emotional distress damages should be granted.

In addition, based on the failure of Lockett's substantive claims against the City Defendants, his damage claims for loss of reputation, humiliation, embarrassment, and negligence also fail.

**5) Plaintiffs' <u>Monell</u> claims against Nagin and Riley**

As an initial matter, Plaintiffs' claims against Nagin and Riley in their official capacities are effectively suits against the City of New Orleans as a municipality. See <u>Woodard v. Andrus</u>, 419 F.3d 348, 352 (5th Cir. 2005). As such, the standards for municipal liability established by the Supreme Court's decision in <u>Monell v. Dep't of Soc. Serv.</u>, 436 U.S. 658 (1978), are applicable. A municipality is liable under § 1983 only if its "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." <u>Id</u>. at 694. The Fifth Circuit has noted several ways in which a plaintiff can establish that a policy or custom has inflicted a constitutional violation:

> The plaintiff can prove the existence of a municipal policy through, inter alia, the actions of the municipality's legislative body or an individual with final decision making authority. The plaintiff can also prove the existence of a municipal custom by pointing to a persistent, widespread practice of city officials or

15

employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.

Deville v. Marcantel, --- F.3d ----, 2009 WL 1162586 (5th Cir. 2009) (internal citations and quotations omitted). Stated differently, "[f]or liability to attach, three elements must be proved: "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." Henry v. City Of Taylor, Tex., 2009 WL 1616175, *1 (5th Cir. June 9, 2009) (citing Pineda v. City of Houston, 291 F.3d 325, 328 (5th Cir. 2002)). As such, a plaintiff must show "either a formal policy officially adopted and promulgated by city policymakers, or a well-settled and common practice by city officials or employees of which the city or its policymakers were actually or constructively aware." Id. Additionally, it is clear that a claim for municipal liability under § 1983 must be premised on an independent constitutional violation. See, e.g., id. and Plemons v. Amos, 306 Fed. Appx. 160, 163 (5th Cir. 2009).

Under Monell, Plaintiffs' claims for municipal liability against Nagin and Riley fail as a matter of law for several reasons. First, as the Court has noted at length above, Plaintiffs' have failed to show any constitutional violation on the part of the City Defendants. As such, Plaintiffs have not

met the *sine qua non* requirement of a Monell claim - namely an underlying constitutional violation - that must exist even before any analysis of an alleged policy or custom.  Furthermore, even if Plaintiffs had made a showing of a viable constitutional violation, they have failed to adequately support their allegations of any official policy or custom of which either Nagin or Riley can be charged with knowledge as policy maker. Moreover, given that Plaintiffs' municipal liability claims are based on failure to train allegations, their insufficient showing of a policy or custom likewise results in an insufficient showing of any deliberate indifference to constitutional rights by Nagin or Riley.  In fact, the entirety of Plaintiffs' opposition to the City Defendants' motion to dismiss the Monell claims consists of a mere reassertion of the allegations in their complaint.  As the Supreme Court has held,  "Monell's rule that a city is not liable under § 1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible." Harris, 489 U.S. at 389.  As such, the City Defendants' motion for summary judgment as to the Monell claims against Nagin and Riley should be granted.

**6)   Plaintiffs' Claims for Injunctive Relief**

For the same reasons stated in the Court's ruling on the

17

State Defendants' motion (Rec. Doc. 81), the claims for prospective injunctive relief against Nagin and Riley should be dismissed with prejudice under <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 109 (1983).

In sum, all Plaintiffs' claims against the City Defendants fail as a matter of law on the present record.  Accordingly,

**IT IS ORDERED** that the City Defendants' **Motion to Dismiss Plaintiffs' Complaint Pursuant to F.R.C.P. 12(c) or, Alternatively, for Summary Judgment Pursuant to FRCP 56 (Rec. Doc. 57)** is hereby **GRANTED**, insofar as its seeks summary judgment of Plaintiffs' claims.

**IT IS FURTHER ORDERED**, in light of the above ruling, that all Plaintiffs' claims against the City Defendants are hereby **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this  30th  day of    June   , 2009.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE