```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

SHAWN M. LOCKETT ET AL                           CIVIL ACTION

VERSUS                                           NO: 08-4712

NEW ORLEANS CITY ET AL                           SECTION: J(2)

## ORDER AND REASONS[1]

Before the Court is Plaintiff Shawn Lockett ("Lockett") and Melanie Lockett's ("Mrs. Lockett") (collectively "Plaintiffs") **Motion for New Trial (Rec. Doc. 84)**, seeking an order vacating the Court's Judgment dismissing Plaintiffs' claims against the State Defendants and the City Defendants with prejudice (Rec. Doc. 83), based on alleged manifest errors of law and fact. The Court has reviewed the motion, the record, and the memoranda of counsel, and now finds that Plaintiffs' motion should be denied for the reasons that follow.

As both the Court and the parties are intimately familiar with the facts of this case, the Court adopts for purposes of the present ruling its summary of the facts and procedural history of this matter as set forth in prior orders (Rec. Docs. 81 and 82).

---

[1] The abbreviations utilized in the Court's related orders in this case (Rec. Docs. 81 & 82) will also be used in discussing the present motion. Specifically, the national guardsmen Christopher Ahner, Brandt Arceneaux, and Jonathan Bieber will be referred to collectively as "the MP Defendants." Additionally, Governor Jindal, SUNO officer Joseph Thomas, and the MP Defendants will be referred to collectively as "the State Defendants."

**THE PARTIES' ARGUMENTS**

Initially, Plaintiffs allege that the Court's conclusion that the State Defendants had sufficient probable cause to support an arrest for the offense of careless driving is incorrect as a matter of law. Plaintiffs contend that the Louisiana decisions cited by the Court in fact do nothing more than support their argument that probable cause for a traffic *stop* is separate and distinct from the probable cause necessary to affect an *arrest* when the initial probable cause for the stop does not support an arrest. In any event, Plaintiffs also argue that, even if careless driving were an arrestable offense, the Court applied the incorrect standard in determining that probable cause existed based on Bieber and Arceneaux's testimony. Specifically, Plaintiffs argue that the facts and circumstances within the officers' knowledge *at the time of the stop* did not give rise to probable cause for an arrest. Rather, Bieber and Arceneaux both testified that they only intended to *warn* Lockett when they initiated the stop. As such, Plaintiffs argue that the Court improperly concluded that Bieber and Arceneaux had probable cause to arrest Lockett for careless driving *at the time they stopped him*, despite the alleged fact that the decision to arrest was not made until *after* Lockett called 911. In sum, Plaintiffs' assert that the Court "erroneously reasoned that because careless driving is an arrestable offense, whether or not the arresting

officers were aware of this fact, the arresting officers had probable cause for the arrest," and as such improperly concluded that the State Defendants and Fletcher had proper probable cause to arrest Lockett. Rec. Doc. 84, p.6

Additionally, Plaintiffs argue that the Court improperly ignored evidence of malice and made credibility determinations that are improper on a summary judgment review. Plaintiffs note that Lockett submitted evidence - specifically the recording of his 911 call and Mrs. Lockett's hand-written notes taken at the scene - which indicates that the initial basis for the stop was *solely speeding*, and only after his 911 call regarding race discrimination were other traffic violations mentioned. Plaintiffs argue that this evidence, and the credibility issues implicated by the evidence, render summary judgment improper.

Next, Plaintiffs contend that the Court improperly accepted Ahner's testimony that he read Lockett his Miranda rights immediately when he placed Lockett in the MP vehicle, despite Lockett's testimony that he was only read his rights after an hour of detention. Plaintiffs contend that this mistake in fact precludes summary judgment.

Likewise, Plaintiffs contend that the Court improperly accepted Arceneaux's post hoc testimony that the area in which Lockett was stopped was relatively busy with prevalent youth pedestrian traffic. Plaintiffs assert that this description of

3

the area is "easily rebuttable upon sight," and further point out that Fletcher's testimony does not indicate that Arceneaux even mentioned any risk of danger posed by Lockett's driving. Plaintiffs contend that this constitutes a mistake of fact requiring entry of an order vacating the Court's judgment.

Next, Plaintiffs note that the Court's June 26, 2009 Order and Reasons indicated that Plaintiffs presented neither a transcript nor audio of the incident recall log beginning with Bieber's call regarding the stop and continuing through to Lockett's booking. Further, Plaintiffs point out that the Court concluded that the only summary judgment evidence in the record indicated that Bieber's call was at 9:13:32 and that Lockett's 911 call was at 9:13 a.m. as well. Plaintiffs argue that *they did in fact submit a recording* of both the 911 call and the radio transmissions, as well as a transcript of both, in support of Lockett's contention that his arrest was in retaliation for his 911 call regarding discrimination. Plaintiffs contend that this mistake of fact is relevant to Lockett's claims of discrimination, and requires that the Court's Judgment be withdrawn.

Additionally, Plaintiffs argue that the Court erred in concluding that Lockett's seizure/detention was not unreasonable in length due to the fact that Lockett himself involved the NOPD. Plaintiffs note that Ahner himself requested the presence of NOPD

4

officers, and thus Lockett alone was not responsible for involving the NOPD.  Furthermore, Plaintiffs allege that the Court improperly ignored evidence that the State Defendants huddled together during Lockett's detention for the alleged purpose of determining whether to arrest him.  Plaintiffs contend that this evidence should have precluded summary judgment of their civil rights conspiracy claims under 18 U.S.C. § 1985(3).

Plaintiffs also contend that the Court incorrectly ruled that Lockett did not allege or argue any injuries arising from the allegedly unreasonable searches of his person, despite the fact that he did allege claims of loss of reputation, humiliation, embarrassment, and pain and suffering.

Finally, Plaintiffs argue that the Court relied on a misquotation of Bieber's statement to Lockett in granting the various motions for summary judgment.  Specifically, the Court indicated that Bieber told Lockett he needed to be **"at"** SUNO, whereas Lockett alleged that Bieber said he needed to **"go to"** SUNO.  Plaintiffs note that "[t]he verbs to 'be' and 'go' are not synonyms," and suggest that the Court's "mistake" lends itself to the Court's rationale that Bieber's statement was merely a comment on Lockett's tardiness, as opposed to Lockett's contention that Bieber's explanation of his statement was merely an attempt to justify a racist remark.

In response, the City Defendants note that Plaintiffs have

5

filed their present motion improperly under Rule 59(a)(2) as a motion for new trial, when it should have been filed as motion to alter or amend judgment under Rule 59(e).  In any event, the City Defendants note the high standard for relief under Rule 59(e) - namely the requirement that the motion point out manifest error of law or fact, an intervening change in the law, newly discovered evidence, or some other manifest injustice - and contend that Plaintiffs have not met that burden.  With that procedural argument, the City Defendants go on to adopt the arguments of the State Defendants in opposition to Plaintiffs' motion.

For their part, the State Defendants note that - regardless of the Court's discussion of whether or not probable cause existed for a careless driving arrest - *the Court specifically concluded and based its ruling on the fact that probable cause existed for a reckless driving offense*.  As such, the State Defendants argue that Plaintiffs' focus on the issue of whether the Court properly analyzed the careless driving issue is irrelevant in light of its clear holing that probable cause existed for a reckless driving arrest.  In any event, the State Defendants argue that Bieber and Arceneaux's subjective intent is irrelevant on the issue of probable cause, and thus the Court's Judgment should stand.

The State Defendants also refute Plaintiffs claims that

6

Bieber and Arceneux did not have probable cause to arrest Lockett for reckless driving by pointing to Mrs. Lockett's *own handwritten notes*, which indicate that Fletcher actually stated that Lockett was speeding in an area with schools and day care facilities. Rec. Doc. 51, Ex. E, p.2. The State Defendants reiterate that Lockett is not on trial for a reckless driving offense – rather, the sole issue is whether the officers involved in his arrest had probable cause in light of all the circumstances to arrest him for reckless driving. As such, the State Defendants argue that even if Bieber and Arceneaux initially intended only to warn Lockett, such subjective intent does not negate the existence of probable cause for an arrest based on reckless driving. As such, the State Defendants argue that Plaintiffs' motion should be denied.

Next, the State Defendants refute Plaintiffs' argument that issues of credibility should have precluded summary judgment. The State Defendants note that <u>Deville v. Maracantal</u>, 567 F.3d 156, 165 (5th Cir. 2009) – which the Plaintiffs rely on for their credibility argument – involved officers with a history of improper arrests. However, there is no evidence whatsoever that any of the officers in this case have any such history. Further, the State Defendants note that Plaintiffs' arguments regarding retaliation and malice are based on their own self-serving statements, which were properly disregarded on summary judgment

7

review.

The State Defendants also rebut Plaintiffs numerous arguments regarding alleged material mistakes of fact in the Court's prior rulings. First, with respect to the timing of Lockett's mirandizing, the State Defendants note that the alleged "mistake" cited by the Plaintiffs appears in the "Procedural History and Background Facts" section of the Court's June 26, 2009 order, which was only intended to provide an overall view of the case. However, the State Defendants note that in the Court's actual analysis, the timing of Lockett's mirandizing was properly held to be irrelevant to the constitutionality of the searches and seizure as a matter of qualified immunity. Next, the State Defendants argue that the Court did not improperly adopt Arceneaux's testimony - which was itself bolstered by Fletcher's similar testimony - that the area in which Lockett was stopped was busy.

Third, the State Defendants contend that there is *no evidence* to suggest that Bieber's reporting of the stop to his headquarters occurred *after* Lockett's 911 call. The State Defendants note that both the police radio transmissions and Lockett's 911 call are included on a single tape. The fact that Lockett's 911 call precedes the radio transmissions on the tape does not indicate that the call preceded those transmissions, but merely indicates that they were reproduced in that order.

8

Furthermore, and regardless of the technicalities of the taping mechanism, the State Defendants argue that Plaintiffs' contention that the radio transmission of the stop occurred only after Lockett's 911 call is inconsistent with police procedure, which requires that officers call in the license plate of vehicles prior to a stop as a safety precaution. Both Bieber and Arceneaux testified that they followed this procedure in the instant case, and the transcript of the radio transmission further bears this out. Specifically, Bieber states in the transcript of the radio transmission that "it is going to be a Black Chevy Avalanche" and then gives Lockett's license plate numbers. Rec. Doc. 51, Ex. E. The State Defendants argue that the phrase "it is going to be" clearly indicates that the stop *had not yet occurred*. Thus, there is no evidence that Lockett's 911 call preceded the radio transmission to headquarters. In any event, even if Lockett's call did precede the radio transmission, this has no effect on the State Defendants' entitlement to qualified immunity.

Next, the State Defendants argue that the Court properly concluded that Lockett's own involvement of the NOPD extended the length of the stop. Only after Lockett's 911 call did Bieber and Arceneaux call their own supervisor Ahner, who then in turn called Fletcher of the NOPD. Thus, regardless of whether the NOPD was responding based on Lockett's call or Ahner's call to

Fletcher, the State Defendants argue that Lockett's call was the basis for their responding, and further assert that it is illogical to think that Lockett would have left the scene after he himself called the NOPD.

The State Defendants also argue that there is no evidence – not even in Lockett's own testimony – of their "huddling together" during Lockett's detention, and even if there was, such huddling would not constitute adequate proof of a conspiracy. As such, the State Defendants argue that the Court properly dismissed Plaintiffs' § 1985(3) claims.

As for Plaintiffs' contention that Lockett did allege injuries based on various searches, the State Defendants note that Lockett's *own testimony* that the search performed by Bieber was "standard" and that the one performed by Ahner was "appropriate[]" belie any such argument. In any event, the existence vel non of injuries does not affect the State Defendants entitlement to qualified immunity.

Finally, the State Defendants argue that "Plaintiffs' attempt to make an issue out of verb usage" regarding Bieber's statement to Lockett is complicated by the fact that *Lockett himself does not even know what verb Bieber actually used*, citing divergent versions of the statement throughout Plaintiffs' Complaint and Lockett's testimony. In any event, the State Defendants note that the Court specifically refused to adopt any

"correct" version of the statement given the differing versions in the record, but concluded regardless that none of the differing versions evidenced any facially discriminatory animus. As such, the State Defendants argue that Plaintiffs' argument on this point is a red herring.

**DISCUSSION**

As an initial matter, the Court notes that Plaintiffs' motion, insofar as it seeks a "new trial" under Rule 59(a), is improper and should be considered as a motion under Rule 59(e). See Harcon Barge Co. v. D & G Boat Rentals, Inc., 784 F.2d 665, 669-70 (5th Cir.1986) (" '[A]ny motion that draws into question the correctness of a judgment is functionally a motion under Civil Rule 59(e), whatever its label.' " (quoting 9 Moore's Federal Practice ¶ 204.12[1], at 4-67 (1985))). A motion under Rule 59(e) "must be filed no later than 10 days after the entry of the judgment," and as such Plaintiff's motion is timely under Rule 59(e).

The Federal Rules of Civil Procedure do not expressly allow motions for reconsideration of an order. Bass v. U.S. Dept. of Agric., 211 F.3d 959, 962 (5th Cir. 2000). If such a motion is filed within 10 days it is considered under the standards of a Rule 59(e) Motion to Alter or Amend Judgment. Tex. A&M Research Found. v. Magna Transp., Inc., 338 F.3d 394, 401 (5th Cir. 2003). The Fifth Circuit has described the scope and nature of a Rule

59(e) motion as follows:

> A Rule 59(e) motion 'calls into question the correctness of a judgment.' [The Fifth Circuit Court of Appeals] has held that such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment. Rather, Rule 59(e) 'serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.' Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly.

Templet v. HydroChem Inc., 367 F.3d 473, 478-79 (5th Cir. 2004) (citations omitted).

Under the applicable Rule 59(e) standards, the Court finds that Plaintiffs' motion should be denied, as they have not presented any manifest errors of law or fact that call into question the correctness of the Court's judgment.

First of all, with respect to Plaintiffs' arguments regarding the Court's allegedly improper application of Louisiana cases regarding whether careless driving is an arrestable offense, the Court notes as an initial matter that its discussion of whether Bieber and Arceneaux had probable cause to arrest Lockett for careless operation was merely an alternative basis for concluding that probable cause existed for Lockett's arrest. In fact, the Court *specifically held* that probable cause existed to support Lockett's arrest for *reckless driving* - the offense for which he was eventually arrested. Thus, to the extent Plaintiffs rely on the Court's merely alternative point of interest, such a slim reed cannot support their heavy Rule 59(e)

burden. In any event, the Court also notes that the Supreme Court has held that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence," - even as minor as a seat belt violation - "he may, without violating the Fourth Amendment, arrest the offender." Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001). Based on Atwater, even if the only justification for Lockett's arrest were a reckless driving offense, his arrest would still have been supported by probable cause, as Bieber and Arceneaux both testified that they witnessed Lockett commit various traffic violations. As such, Plaintiffs have not presented any error of law or fact that vitiates the Court's judgment, and their Rule 59(e) motion should be denied.

As for Plaintiffs' allegations that the Court relied on mistakes of fact, the Court finds that the record belies these allegations. First, as to the alleged mistake regarding the timing of Lockett's mirandizing, the Court notes that no issue of timing was presented or argued in the context of the summary judgment motions that this Court granted in advance of the final judgment in this case. Thus, to the extent that Plaintiffs attempt in this Rule 59(e) motion to present some new argument based on the timing of Lockett's mirandizing, such arguments are improper and should be rejected. Next, Plaintiffs' argument that the Court mistakenly adopted Arceneaux's testimony regarding the

13

nature of the area in which Lockett was stopped is simply wrong. Arceneaux's testimony regarding the nature of the area *went unrefuted* on the summary judgment record before the Court, and thus there was no question of material fact on the relevant record as to the nature of the area where Lockett was stopped. Furthermore, as noted by the State Defendants, Mrs. Lockett's *own handwritten notes* from the day of Lockett's arrest indicate that Fletcher actually stated that Lockett was speeding in an area with schools and day care facilities. As such, the Court did not rely on any mistaken facts in this regard.

Third, Plaintiffs suggest that the Court mistakenly indicated that they failed to present either a transcript or audio recording of the radio transmissions by the State Defendants and Lockett's 911 call, despite the fact that a copy of the audio was hand-delivered to the Court and a transcript was entered in the record. First of all, the Court notes that an audio CD was delivered *and reviewed in its entirety* by the Court; however, that audio CD *only included a recording of Lockett's 911 call and did not include any audio of the radio transmissions between the State Defendants and headquarters*. Thus, to the extent Plaintiffs' suggest that the Court mistakenly failed to listen to the audio delivered to the Court, it was in fact Plaintiffs who mistakenly failed to present the full audio of the radio transmissions for the Court's review. Further, while the

14

Court acknowledges that an alleged transcript of the radio transmissions was included as an exhibit to Plaintiff's opposition to the State Defendants' Motion for Summary Judgment (Rec. Doc. 51, Ex. E), it should be noted that the alleged transcript is merely an untitled, unsigned, completely unverified "typed-out" version of what Plaintiffs allege to have constituted the radio transmissions between the State Defendants and headquarters. Given that the Court had no audio with which to compare this completely unauthenticated document, the Court refused to consider the transcript. In any event, and regardless of these logistical issues, the Court agrees with the State Defendants - who rely on the Plaintiffs own purported transcript for their argument and thus presumably acknowledge its validity to that extent - that Bieber's initial radio transmission regarding the stop of Lockett's vehicle *preceded* Lockett's 911 call. Furthermore, although the Court did note the issue of the timing of the 911 call in various footnotes, the Court's broader analysis of the propriety of Lockett's arrest rendered the issue of the timing of the call irrelevant. As such, Plaintiff's motion should be denied on this ground as well.

Likewise, the Court rejects Plaintiffs' contention that the Court mistakenly assumed that Lockett's own involvement of the NOPD lengthened his detention. The Court's conclusion on this point was not based on any assumption, but on the undisputed

deposition testimony of Bieber, Ahner, and Arceneaux that Lockett's involvement of the NOPD and his escalation of the incident required their continued presence at the scene. Furthermore, the Court dismisses Plaintiffs' conclusory allegation that the Court somehow mistakenly rejected evidence that the State Defendants huddled together, and that this somehow invalidates the Court's dismissal of their § 1985(3) claims. Likewise, the Court finds that Plaintiffs' have not met their Rule 59(e) burden of showing that the Court incorrectly concluded that Lockett did not allege or argue injuries from the allegedly unreasonable searches.

Finally, the Court finds Plaintiffs' syntactical and semantic argument that the Court mistakenly relied on a misquotation of Bieber's statement to Lockett somewhat surprising in light of the fact that the Court *specifically declined* to "make any determination as to which version of Bieber's statement is the most accurate," and further noted that "in the end the true version of the statement may never be established." Rec. Doc. 81, p. 71. This statement reveals that Plaintiffs' argument is simply factually wrong, as the Court *did not rely on any single version* of the statement, misquoted or otherwise. In fact, the Court concluded that regardless of what version of the statement - among the several included in the summary judgment record - might be correct, *none of the versions indicated any*

16

*racial animus* on their face. Thus, Plaintiff's Rule 59(e) motion should be denied on this ground as well. Accordingly,

**IT IS ORDERED** that Plaintiffs' **Motion for New Trial (Rec. Doc. 84),** insofar as it seeks relief under Rule 59(e), is hereby **DENIED.**

**IT IS FURTHER ORDERED** in light of the above ruling that the oral argument requested on Plaintiffs' motion is hereby **CANCELLED.**

New Orleans, Louisiana, this 30th day of July, 2009.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE